**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PHI HEALTH, LLC** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case No. 2:26-cv-1642 |
| **ALLEGIANCE BENEFIT PLAN MANAGEMENT, INC., PERIO, INC., and PERIO, INC. EMPLOYEE BENEFIT PLAN** | : | |
| | : | |
| Defendants. | : | |

# COMPLAINT

Plaintiff PHI Health, LLC ("PHI") files this Complaint against Allegiance Benefit Plan Management, Inc., Perio, Inc. and Perio, Inc. Employee Benefit Plan (collectively, the "Defendants") for the failure to pay overdue IDR awards issued pursuant to the No Surprises Act ("NSA").

## INTRODUCTION

1. Defendants are violating the NSA. Congress created the Independent Dispute Resolution ("IDR") process as a streamlined method to resolve payment disputes between out-of-network providers of air-ambulance services and commercial health insurers.[1]

[1] This Complaint uses the shorthand "commercial health insurer" to reference all types of payors covered by the No Surprises Act, including individual health insurance issuers; group health insurance issuers; and self-insured group health plans, including employee welfare benefit plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

2. The IDR process is an arbitration in which a private arbitrator (known as an "IDR entity") issues a written determination selecting the amount due to the provider by a patient's commercial health insurer.

3. The NSA mandates that IDR determinations "shall be binding upon the parties" to the dispute and that payment by the plan or issuer "shall be made directly to the nonparticipating provider not later than 30 days" after the determination. These provisions create a money-mandating obligation and a right for providers to enforce that obligation.

4. Defendants have refused to comply with this mandatory obligation. More than 30 days – and many months – have passed since issuance of the IDR determinations at issue here; yet Defendants have not paid.

5. Without judicial enforcement, these "binding" awards would be rendered meaningless to providers, and Defendants could ignore their statutory payment obligation.

6. This case seeks only enforcement—not review—of binding IDR determinations under the NSA, or alternatively, confirmation under the Federal Arbitration Act ("FAA") and/or the Ohio Arbitration Act. PHI does not ask this Court to revisit the merits of any IDR award.

7. PHI therefore brings this action, pursuant to the NSA, the FAA, the Ohio Arbitration Act, and the Employee Retirement Income Security Act ("ERISA") seeking entry of judgment confirming the IDR Awards set forth in Exhibit B to this pleading and other applicable relief including (a) entry of judgment confirming the IDR Awards; (b) an award to PHI of $22,480.64 (the "IDR Award Balance"); and (c) equitable relief enforcing such obligations, together with such other relief as the Court deems appropriate.

## PARTIES

### Plaintiff

8. Plaintiff PHI Health, LLC is a limited liability company organized under the laws of the State of Louisiana and headquartered in Tempe, Arizona.

### Defendants

9. Defendant Allegiance Benefit Plan Management, Inc. ("Allegiance" or "Plan Administrator") is a company organized under the laws of the State of Montana and doing business in Ohio. On information and belief, Allegiance is the third-party administrator of the Plan and exercises discretionary authority or control over the administration of the Plan and payment of benefits, including the claim and IDR Award at issue. Plan Administrator may be served with process by serving its registered agent, CT Corporation System at 4400 Easton Commons Way, Suite 125 Columbus, Ohio 43219.

10. Defendant Perio, Inc. ("Sponsor") is a corporation within and existing under the laws of the State of Ohio. Sponsor serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and their dependents called, upon information and belief, Perio, Inc. Employee Benefit Plan (the "Plan"). The Plan provided insurance coverage for the air transport at issue in this case. Sponsor is thus a representative and fiduciary of the Plan and is sued here in that capacity. Sponsor and Plan may be served with process by serving Sponsor's registered agent, Thomas J. Murray at 6156 Wilcox Road, Dublin, Ohio 43016.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because PHI's claims arise under federal law, including the NSA, 42 U.S.C. § 300gg-111, and 42 U.S.C.

§ 300gg-112, which mandate the payment of IDR awards within thirty days of issuance.[2] This Court has supplemental jurisdiction over PHI's claim under the Ohio Arbitration Act pursuant to 28 U.S.C. § 1367.

12. The Court also has personal jurisdiction over Defendants because Plan Administrator purposefully directed the administration, claim processing, and payment activities at issue to the Plan in Ohio, and Plaintiff's claims arise from those activities in Ohio. Sponsor is organized under the laws of the State of Ohio and subject to general jurisdiction there. Sponsor directed the Plan Administrator to administer the Plan in the State of Ohio. Sponsor's registered agent is located in Dublin, Ohio, within this District.

13. The Court also has personal jurisdiction over Plan and Sponsor under Federal Rule of Civil Procedure 4(k)(1)(C) and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), which authorizes nationwide service of process and thereby confers personal jurisdiction over defendants having sufficient contacts with the United States, which includes the Plan, Sponsor, and Plan Administrator. The Plan may be sued as an entity under 29 U.S.C. § 1132(d)(1).

14. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because each Defendant resides in and/or conducts substantial business in this District, and, on information and belief, the acts and omissions giving rise to Plaintiff's claims—including the administration, processing, and decisions regarding nonpayment of claims and the IDR awards—occurred in this District.

15. Venue is proper under 28 U.S.C. § 1391(b)(2) because Plan Administrator resides in and/or conducts substantial business in this District, and, on information and belief, the acts and

[2] 29 U.S.C. § 1185f and 42 U.S.C. § 300gg-112 govern out-of-network air ambulance services and mandate payment of IDR awards in 30 days. These statutes incorporate and refer to 29 U.S.C. § 1185e and 42 U.S.C. § 300gg-111, which govern other medical services subject to the NSA.

omissions giving rise to PHI's claims—including the administration, processing, and decisions regarding nonpayment of claims and IDR awards—occurred in this District.

## FACTUAL BACKGROUND

### A. The Importance of PHI's Service.

16. The air ambulance industry plays an integral role in the American healthcare system, and PHI provides an essential service for many Americans. Air ambulances serve as a lifeline connecting critically ill and injured patients to healthcare, particularly in rural American communities where, between 2010 and 2021, at least 106 have closed.[3]

17. Air ambulances transport trauma, stroke, heart attack, and burn patients and other emergent cases requiring critical care. Time is of the essence during air medical transport. By reaching the patient quickly (to provide emergency interventions) and then transporting that patient quickly to a qualified treatment facility, air ambulances save and improve lives.[4]

18. The delivery of on-demand, life-saving air ambulance services is expensive and requires substantial investments in specialized aircraft, air bases, technology, personnel, and regulatory compliance systems. PHI is critically dependent on payments from commercial health

---

[3] S. McCarthy, MD, *et al.*, *Impact of Rural Hospital Closures on Health-Care Access*, J. Surgical Research, Feb. 2021 (258), pp. 170-178.

[4] *See, e.g.*, O. Lapidus *et al.*, *Trauma patient transport to hospital using helicopter emergency medical services or road ambulance in Sweden: a comparison of survival and prehospital time intervals*, Scandinavian Journal of Trauma Resuscitation and Emergency Medicine (2023), vol. 31, p.101, https://perma.cc/WGP8-CSXC (based on study of medical records of 74,032 patients receiving emergency medical transports in Sweden between 2012 and 2022, authors concluded that "HEMS [helicopter-transported] patients had significantly lower mortality compared to patients transported by [ground] EMS"); D. Michaels, *et al.*, *Helicopter versus ground ambulance: review of national database for outcomes in survival in transferred trauma patients in the USA*, Trauma Surgery & Acute Care Open, Mar. 6, 2019, https://perma.cc/KU8E-YLVE (based on analysis of 469,407 trauma patients receiving ground or air transport in the United States in 2014, and after adjusting for age, gender, and Injury Severity Score (ISS), the authors concluded that "trauma patients who were transferred by helicopter were 57.0% less likely to die than those transferred by GA [ground ambulance]").

insurers derived from the NSA's IDR process. PHI provides just one service: emergency medical transport. The majority of the patients transported by PHI are covered by Medicare or Medicaid. Those government programs' reimbursements typically do not even cover PHI's costs of providing the services. PHI is therefore critically dependent upon the payments it receives from commercial health insurers, especially the payments now governed by the NSA.

**B. Background on the No Surprises Act ("NSA").**

19. The NSA became effective on January 1, 2022.

20. The NSA imposes a federal obligation on commercial health insurers to pay out-of-network providers for certain air ambulance services. The commercial health insurers must pay the applicable "out-of-network rate" due for the service directly to the provider, less any cost-sharing amount owed by the patient.

21. Pursuant to the statute, a group health plan or insurer has 30 days from which the bill for a covered service is transmitted by the provider to pay or deny the claim. 29 U.S.C. § 1185f(a)(3)(A); 42 U.S.C. § 300gg-112(a)(3). If initial payment is too low, the provider may initiate an "open negotiation period" to attempt to negotiate a higher amount. 29 U.S.C. § 1185f(b)(1)(a); 42 U.S.C. § 300gg-112(b)(1). If the negotiations fail, the provider may initiate the IDR process. 29 U.S.C. § 1185f(b)(1)(B); 42 U.S.C. § 300gg-112(b)(2).

22. The IDR process is a mandatory arbitration process used to determine pricing for out-of-network air ambulance transports of patients who are covered by commercial health insurers.

23. Pursuant to the NSA, the U.S. Departments of Labor, Health and Human Services, and the Treasury (the "Departments") issued regulations to implement the IDR process. The Department or Departments with regulatory authority over a specific air ambulance transport and subsequent IDR dispute depends on the type of health insurance or group health plan at issue.

24. The IDR process is baseball-style arbitration. It requires each party to submit proposed offers of payment for the services at issue to a third-party IDR entity. 29 U.S.C. § 1185f(b)(5); 42 U.S.C. § 300gg-112(b)(5). The IDR entity considers both proposed offers and several statutory factors (about which the parties may submit information in support of their offers) and then must select one of the parties' offers as the payment amount owed for the services at issue. *Id.*

25. The NSA makes "binding" the IDR entity's determination. The commercial health insurer must make any additional "payment required" by the determination "directly to the nonparticipating provider **not later than 30 days after** the date on which such determination is made" by the IDR entity. 29 U.S.C. § 1185f(b)(5); 42 U.S.C. § 300gg-112(b)(5) (emphasis added).

26. Once a certified IDR entity issues a determination, the NSA affords the losing party only a narrow opportunity to challenge the award on the bases enumerated in 9 U.S.C. § 10(a)(1)-(4). 29 U.S.C. § 1185f(b)(5); 42 U.S.C. § 300gg-111(c)(5)(E). Any other attempt to challenge the award is barred. *Id*.

27. In enacting the NSA, Congress fundamentally altered the manner in which providers may obtain payment for covered services. Rather than permitting providers to pursue their traditional collection and reimbursement remedies, Congress required providers and payors to resolve payment disputes through a mandatory federal IDR process and made the resulting determinations binding. Congress further required payors to satisfy the payment amount determined through that process within thirty days, subject only to the limited vacatur grounds incorporated from the Federal Arbitration Act. The statute thus replaces providers' traditional enforcement mechanisms—including their right to bill patients for the full cost of providers'

services—with a mandatory federal dispute-resolution framework that culminates in a binding payment obligation.

28. The NSA's restrictions on judicial *review* apply only to efforts to vacate or otherwise challenge the validity of an IDR determination, as noted above. Nothing in the statute extends those limitations to actions seeking to enforce compliance with a final and binding IDR determination.

29. Although the Departments are authorized to provide systemic oversight of the statute—including data collection, audits, rulemaking, and the imposition of modest civil monetary penalties payable to the government to deter systemic noncompliance[5]—they lack authority to compel payment of individual IDR awards to prevailing providers. The NSA provides no administrative mechanism through which a prevailing provider may compel payment of an individual IDR award, leaving judicial enforcement as the only means of effectuating the statute's mandatory payment obligation.

30. Absent judicial enforcement, a losing payor could disregard a binding IDR determination without satisfying the underlying payment obligation, rendering Congress's mandatory payment requirement effectively unenforceable. The NSA's text and structure do not permit that result; rather, they require that binding IDR determinations be enforceable so that prevailing providers receive the payments to which they are entitled.

---

[5] The availability of civil monetary penalties for nonpayment of IDR awards is itself disputed. On information and belief, certain payors contend that the Departments' preexisting civil monetary penalty authority does not extend to the failure to pay binding IDR determinations. Yet payors have argued in litigation that providers must rely on administrative enforcement rather than judicial enforcement to remedy that same nonpayment. If the Departments lack authority to penalize nonpayment, as those payors contend, administrative enforcement supplies no remedy for that violation; and even if such authority exists, a penalty payable to the government neither compels payment of the particular award nor provides the prevailing provider the amount it is statutorily owed.

**C. PHI Filed Arbitration and Prevailed, Yet Defendants Refuse to Pay.**

31. The air ambulance services provided by PHI were air ambulance services furnished as a nonparticipating provider to participants, beneficiaries or enrollees ("Patients") of commercial health insurers. Those services are "qualified IDR items and services" under 45 C.F.R. § 149.510(xi)(A), and they qualify for mandatory payment under the NSA, including 29 U.S.C. § 1185f(a); and 42 U.S.C. § 300gg-112(a).

32. Defendants and Patients received the benefit of PHI's air ambulance services during times of emergent medical need. In many situations, lives were saved or more serious conditions avoided (and thus the costs associated therewith).

33. PHI followed industry standard billing process for billing Defendants for these transports.

34. In response, Plan Administrator sent PHI either denial of payment or low initial payments for the two service codes billed for the transports.

35. Because the initial payments were deficient, PHI turned to the dispute resolution process set forth in the NSA.

36. PHI first timely initiated the open negotiation process. The dates on which open negotiation was initiated for the unpaid awards are listed on Exhibit A. The parties were unable to agree to a payment rate for PHI's services during the open negotiation periods.

37. When open negotiations failed, PHI timely initiated IDR proceedings by submitting notice of initiation through the federal IDR for the transports and service codes at issue. The dates on which IDR proceedings were initiated are listed on Exhibit A.

38. During the IDR process, PHI timely submitted its offers for payment, as well as information in support of those offers.

39. Plan Administrator received notice of the related IDR proceedings but elected not to submit its own offers.

40. The certified IDR entity (*i.e.*, arbitrator) then issued written determinations, which resulted in PHI being owed additional payments for the out-of-network services (the "IDR Awards"), copies of which are attached as Exhibit B. The IDR Awards are final and binding.

41. PHI seeks to recover the outstanding balances due on the IDR Awards, together with applicable statutory or equitable interest, and all further relief to which it is entitled.

## CLAIMS

### Count 1: Confirmation of IDR Awards Under the NSA (29 U.S.C. § 1185f(b)(5)-(6); 42 U.S.C. § 300gg-112(b)(5)-(6))

(*Against all Defendants*)

42. PHI incorporates by reference the allegations of the preceding paragraphs.

43. The NSA creates enforceable rights for providers like PHI. The NSA uses clear, mandatory, rights-creating language, including that a determination of a certified IDR entity "*shall be binding upon the parties involved*" and that payment "*shall be made directly to* [PHI] *not later than 30 days after* the date on which such determination is made" by the IDR entity. 29 U.S.C. § 1185f(b)(5)(D)-(b)(6); 42 U.S.C. § 300gg-112(b)(5)(D)(b)(6) (emphasis added).[6] These provisions impose a specific money-mandating obligation to pay a sum certain to providers by a date certain. PHI, as a provider, is within the class of entities the NSA is designed to protect.

44. Congress specified that a provider is owed a specific amount (as determined by the certified IDR entity), from a specific payor (the plan or insurer that participated in the IDR process), by a date certain (no later than 30 days after the determination). Statutes that impose such mandatory payment obligations have long been understood to create enforceable rights and

[6] And, as applicable, 26 U.S.C. § 9817.

remedies, particularly where, as here, the obligation is fixed, final, and non-discretionary. *See, e.g.*, *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 324–28 (2020) ("Statutory 'shall pay' language often reflects congressional intent to 'create both a right and a remedy'").

45. These provisions are phrased in explicit, rights-creating terms and are unmistakably focused on the class of entities Congress intended to benefit—out-of-network emergency providers that prevail in the IDR process. They satisfy the standard articulated in *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023), and *Gonzaga University v. Doe*, 536 U.S. 273 (2002), for the creation of enforceable federal rights.

46. This action does not seek judicial *review* of the merits of any IDR determination, which Congress limited to the narrow grounds for vacatur under the Federal Arbitration Act. 29 U.S.C. § 1185e(c)(5)(E); 42 U.S.C. § 300gg-111(c)(5)(E)(i). Instead, this action seeks judicial *enforcement* of binding awards. Judicial enforcement is categorically different from judicial review in that it does not seek to disturb the written determination, and judicial enforcement is necessary to give effect to Congress's command that binding determinations be timely paid. *PHI Health, LLC v. Optimum Choice, Inc. d/b/a United Healthcare*, 826 F. Supp. 3d 654 (D. Md. 2026).

47. Absent judicial enforcement, the NSA's declaration that IDR determinations are "binding" and "shall" be paid would be rendered precatory rather than mandatory, contrary to Congress's express design.

48. No federal agency is authorized by the NSA to compel payment of individual IDR awards through administrative proceedings. Although the Departments were directed under the NSA to engage in administrative rulemaking, to conduct audits of payors' "qualifying payment amount" calculations, and to select and certify IDR arbitrators, the NSA *does not* direct or empower these agencies to collect, adjudicate, or compel payment from insurers to providers.

49. Absent judicial enforcement, Defendant(s) could ignore binding IDR determinations with impunity, rendering Congress's carefully constructed dispute-resolution framework meaningless.

50. In the NSA, Congress prohibited providers from balance billing patients and displaced providers' traditional ability to collect the unpaid balance from patients. The IDR process and the mandatory payment obligation that follows a binding determination are the exclusive means by which providers may obtain compensation. It is inconceivable that Congress intended to strip providers of all alternative remedies while simultaneously leaving prevailing providers without any mechanism to enforce binding federal payment determinations.

51. PHI thus has a right under the NSA to judicial enforcement of IDR Awards that commercial health insurers fail to pay within 30 days.

52. More than 30 days have passed since each IDR Award was issued, and PHI has not received payment due on those awards.

53. Defendants have not filed suit to vacate the IDR Awards pursuant to the limited grounds authorized by statute; they simply have not paid the award at all.

54. The amounts owed on unpaid, partially paid, and late-paid awards plus prejudgment and post-judgment interest should be issued as a final judgment.

**Count 2: Confirmation of IDR Awards Under Federal Arbitration Act**
**(9 U.S.C. §§ 1, *et seq.*)**
(*Against all Defendants*)

55. PHI incorporates by reference the allegations of the preceding paragraphs.

56. The IDR process constitutes arbitration within the meaning of the Federal Arbitration Act.

57. Defendants agreed to binding dispute resolution. Defendants received notice of the

IDR process but elected not to submit their own offers. Defendants also voluntarily provided or administered coverage or benefits subject to the NSA, knowing that doing so required participation in the federal IDR process; and thereby further consented to participate in the federal IDR process.

58. In the NSA, Congress also indicated that IDR written determinations are to be treated as arbitration awards. For example, Congress mandated that such an award could only be vacated on the grounds set forth in Paragraphs 1 through 4 of Section 10 of the Federal Arbitration Act.

59. The certified IDR entities acted as neutral adjudicators with respect to the IDR Awards.

60. The IDR Awards are valid arbitration awards that have not been vacated or set aside by any authority.

61. Confirmation is not "judicial review" of the merits of an IDR determination but rather ministerial entry of judgment on the awards previously rendered. The IDR Awards should thus be confirmed by judgment of this Court pursuant to the FAA, 9 U.S.C. § 9.

**Count 3: Confirmation of IDR Awards Under the Ohio Arbitration Act**
**(Ohio Rev. Code § 2711.01 et seq.)**
(*Against all Defendants*)

62. PHI incorporates by reference the allegations of the preceding paragraphs.

63. The IDR process constitutes arbitration within the meaning of the Ohio Arbitration Act.

64. Defendants agreed to binding dispute resolution. Defendants received notice of the IDR process but elected not to submit their own offers. Defendants also voluntarily provided or administered coverage or benefits subject to the NSA, knowing that doing so required participation in the federal IDR process; and thereby further consented to participate in the federal IDR process.

65. In the NSA, Congress also indicated that IDR written determinations are to be treated as arbitration awards. For example, Congress mandated that such an award could only be vacated on the grounds set forth in Paragraphs 1 through 4 of Section 10 of the Federal Arbitration Act.

66. The certified IDR entity acted as a neutral adjudicator with respect to the IDR Awards.

67. The IDR Awards are valid arbitration awards that have not been vacated or set aside by any authority.

68. Confirmation is not "judicial review" but rather entry of the awards previously rendered. The IDR Awards should thus be confirmed by judgment of this Court pursuant to Ohio Rev. Code § 2711.01 et seq.

**Count 4: Claim for Enforcement of NSA Under ERISA and Payment of Plan Benefits (ERISA 29 U.S.C. § 1132(a)(1)(B))**

69. PHI realleges and incorporates all preceding paragraphs.

70. On information and belief, the claims at issue involve a Patient transported by PHI who, at the time of the transport, was a participant or enrollee in or a beneficiary of an employee welfare benefit plan—specifically a group health plan called the Perio, Inc. Employee Benefit Plan (the "ERISA Plan")—subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (collectively, the "ERISA Claims").

71. Plan Administrator and Sponsor act, on information and belief, as fiduciaries and/or parties exercising discretionary authority or control over plan administration and claims payment.

72. With respect to the ERISA Claim, PHI has been assigned all of Patient's claims under and with respect to the ERISA Plan, including Patient's rights under 29 U.S.C. §§ 1132(a)(1) and (a)(3) such as to recover benefits due and to seek equitable relief. The Assignments of Benefits

state, in relevant part:

> **Authorized Representative**: I hereby designate and authorize Provider, to the full extent permissible under law and under any applicable Benefit Plan, including any ERISA plan, to act as my Authorized Representative and to exercise: (1) the right and ability to act on my behalf in connection with any claim, right or cause of action that I may have under such Benefit Plan; and (2) the right and ability to act on my behalf to pursue such claim, right, or cause of action in connection with said Benefit Plan (including but not limited to, the right to act on my behalf in respect to a Benefit Plan governed by the provisions of ERISA as provided in 29 C.F.R. § 2560.503-1(b)(4)) with respect to any healthcare expense incurred as a result of the Services I received from Provider and, to the extent permissible under the law, to claim on my behalf such benefits, claims, or reimbursement, and any other applicable remedy, including fines. A photocopy of this Consent and Assignment shall be as effective and valid as the original.

73. ERISA, as amended by the NSA, also mandates the assignment of Patient's claims and benefits to PHI by law. ERISA mandates that the ERISA Plan "shall . . . pay" the amount due on the IDR award "directly to" the beneficiary's provider of air ambulance services. 29 U.S.C. § 1185f(a)(3); see also id. § (b)(6) (requiring payment "shall be made directly to the nonparticipating provider" by the ERISA Plan).

74. PHI thus has stepped into the shoes of Patient and is now considered a beneficiary of the ERISA Plan pursuant to 29 U.S.C. § 1002(8).

75. Subchapter I of ERISA incorporates requirements of the NSA, including NSA's requirement that a determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "shall be made directly to the nonparticipating provider not later than 30 days after the date on which such determination is made." 29 U.S.C. § 1185e(c)(5)(E)(i)(I); id. § 1185f (b)(5)(D), (6).

76. Upon information and belief, the terms of the ERISA Plan incorporate NSA requirements. Among those incorporated requirements is the obligation for IDR written determinations to be fully paid within 30 days.

77. As the assigned beneficiary, PHI is entitled to enforce the requirements of the NSA,

as incorporated into ERISA and, in turn, the terms of the ERISA Plan—including the duty to pay written determinations within 30 days.

78. On information and belief, the ERISA Plan—including its guarantee of NSA-compliant coverage for air ambulance services—was provided as consideration for labor services provided by Patient or Patient's immediate family members to the Sponsor, who also paid at least a portion of premiums due for such coverage. The benefits purchased with that consideration were supposed to ensure that Patient's air ambulance providers were fully compensated for their services consistent with the terms of the ERISA Plan and ERISA itself.

79. Patient has a strong and concrete interest in ensuring that their group health plan complies with the NSA's requirement that it fully and promptly satisfy IDR written determinations. Patients require the continued availability of air ambulance services—as shown here by their use of those services in an emergency.

80. PHI and other air-ambulance providers have aircraft and personnel on standby 24/7 regardless of whether emergency transport is needed. Those high fixed costs must be offset by reliable payment for beneficiaries' air ambulance services by commercial payors, including group health plans, to remain available.

81. Under 29 U.S.C. § 1132(a)(1), PHI, as assignee-beneficiary, is entitled to sue "to recover benefits due to [it] under the terms of his plan, to enforce [its] rights under the terms of the plan, or to clarify [its] rights to future benefits under the terms of the plan."

82. On information and belief, the benefits due to PHI, as assignee-beneficiary, under the terms of the ERISA Plan include the amount due pursuant to the written determination—which was issued pursuant to PHI's proper claims for benefits under the ERISA Plan. Upon information and belief, the rights of PHI, as assignee-beneficiary, under the terms of the ERISA Plan include

having the ERISA Plan (either directly or acting through its administrator) pay the written determinations within 30 days. The ERISA Plan has refused to pay those benefits—let alone to do so within 30 days.

83. Defendants' failure to pay the ERISA Claim within 30 days (and ongoing refusal to do so) violates the Patient's (and therefore PHI's) rights under ERISA (including 29 U.S.C. §§ 1185e & 1185f) and the terms of the ERISA Plan. That failure to pay constituted an abuse of discretion, including by i) improperly interpreting and applying the ERISA Plan's terms that are not ambiguous; ii) exercising discretion over non-discretionary terms in the ERISA Plan; and iii) denying PHI payment and benefits under the terms of the ERISA Plan.

84. The denial of payment and benefits owed on the written determination was not a substantially justified decision, was arbitrary and capricious, was unsupported by substantial evidence, constituted abuse of any discretion allowed, and was wrongful under all of the circumstances. The payment obligations with respect to a written determination are automatic and unambiguous.

85. Pursuant to 29 U.S.C. § 1132(a)(1), PHI is therefore entitled to the unpaid amount on the written determination, plus interest.

86. PHI is excused from any requirement to exhaust the ERISA Plan's appeal processes (or such processes are deemed exhausted) before filing this suit because, inter alia, i) the ERISA Plan has breached statutory and regulatory requirements; ii) any appeal would be futile since the ERISA Plan would already have missed its payment deadline; and iii) with respect to ERISA Plan's failure to satisfy IDR written determinations, the ERISA Plan does not afford an appeal procedure that provides full and fair review nor does it provide instructions for how to utilize its appeal procedure (if any).

87. Pursuant to 29 U.S.C. § 1132(g), PHI further seeks an award of reasonable attorneys' fees and costs incurred in bringing this action.

**Count 5: Equitable Relief Pursuant to ERISA (29 U.S.C. § 1132(a)(3))**

88. PHI incorporates by reference the allegations of the preceding paragraphs.

89. This claim is pleaded in the alternative to any claim for benefits under 29 U.S.C. § 1132(a)(1)(B), and PHI seeks all forms of equitable relief available under 29 U.S.C. § 1132(a)(3) to remedy and prevent continuing violations of ERISA.

90. The Plan is an employee welfare benefit plan governed by ERISA, 29 U.S.C. § 1001 *et seq*. PHI, as assignee, is authorized to enforce ERISA's requirements, including those imposed by the NSA as incorporated into ERISA.

91. ERISA, as amended by the NSA, requires group health plans to cover out-of-network air ambulance services and to pay the applicable out-of-network rate determined through the statutory process, *see* 29 U.S.C. § 1185f(a)(3)(B), and "shall" make payment directly to the provider within 30 days, *see* 29 U.S.C. § 1185f(b)(6).

92. On information and belief, the NSA's coverage and payment requirements are incorporated into and form part of the terms of the Plan. Accordingly, payment of the amounts determined through the NSA's IDR process constitutes a covered benefit owed for air ambulance services furnished to the Patient.

93. Defendants, acting as fiduciaries and/or parties exercising discretionary authority or control over plan administration and claims payment, have failed and refused to comply with these mandatory ERISA obligations.

94. Defendants' conduct violates ERISA, the terms of the Plan, and their fiduciary duties, including, but not limited to: (a) failing to pay benefits in accordance with a binding IDR

determination; (b) wrongfully denying or withholding covered Plan benefits required by ERISA and the terms of the Plan; and (c) failing to administer the Plan in accordance with governing federal law.

95. PHI seeks equitable relief under 29 U.S.C. § 1132(a)(3) to redress these violations and to enforce ERISA's provisions. Such equitable relief includes, without limitation: (a) an order requiring Defendants to comply with ERISA and the No Surprises Act by paying the full amounts owed under the IDR Awards; (b) appropriate equitable surcharge in the amount of unpaid benefits and losses caused by Defendants' violations; (c) declaratory relief establishing that IDR determinations are binding and must be timely paid under ERISA; (d) injunctive relief requiring Defendants to implement procedures and practices that ensure compliance with ERISA and timely payment of current and future IDR awards.

96. Pursuant to 29 U.S.C. § 1132(g), PHI further seeks an award of reasonable attorneys' fees, costs, and such other relief as the Court deems equitable and proper.

## **JURY TRIAL DEMAND**

97. PHI demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, PHI respectfully prays for judgment against Defendants for the following damages and relief:

1. An award of damages in the amount of the outstanding balances owed on the IDR Awards (the "IDR Award Balance");

2. Pre-judgment and post-judgment interest on all amounts awarded, including compensation for the time value of funds wrongfully withheld;

3. Reasonable attorneys' fees and costs of suit, to the extent permitted by law;

4. Award of all additional damages available under applicable law;

5. Entry of an order confirming the IDR Awards pursuant to the Federal Arbitration

Act and/or applicable state law;

6. Equitable relief requiring Defendants to pay the outstanding IDR Award Balance;

7. Prospective equitable relief requiring Defendants to comply with the No Surprises Act, including timely payment of all future IDR determinations within thirty (30) days unless timely vacated, and, where necessary, narrowly tailored reporting or compliance measures to ensure adherence to federal law;

8. Such other and further legal and equitable relief as the Court deems just and proper.

Dated: November 12, 2026

Respectfully submitted,

/s/ Matthew M. Zofchak
Matthew M. Zofchak (0096279) Trial Attorney
KEGLER, BROWN, HILL & RITTER CO., L.P.A.
65 East State Street, Suite 1800
Columbus, OH 43215
T: (614) 462-5400; F: (614) 464-2634
mzofchak@keglerbrown.com
*Counsel for PHI Health, LLC*